(C.D. 2246)

Hudson Rissman v. United States

United States Customs Court, Third Division

(Decided April 4, 1961)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* and *Paul J. Gavin* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Sheila N. Ziff* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before Johnson, Donlon, and Richardson, Judges

Johnson, Judge: The protests involved in these cases, consolidated at the trial, involve articles, imported from Italy on June 25, 1957, and August 26, 1956, assessed with duty at 4¾ cents per dozen and 23½

per centum ad valorem under paragraph 211 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as earthenware, valued at $10 or more per dozen, which is not tableware, kitchenware, or table and kitchen utensils. It is claimed that the merchandise is entitled to free entry as original paintings or sculpture under paragraph 1807 of said tariff act or is dutiable as works of art at 10 per centum ad valorem under paragraph 1547(a), as modified by the General Agreement on Tariffs and Trade, T.D. 51802, or by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373 and T.D. 52476.

After the cases were tried and submitted, submission was set aside to permit the introduction of evidence that the protests were filed by an authorized person. *Hudson Rissman* v. *United States*, 45 Cust. Ct. 249, Abstract 64482. Such proof has now been supplied by stipulation of the parties. The collector's objection is overruled, and it is held that the protests were filed by a duly authorized attorney for the plaintiff.

At the trial, counsel for the plaintiff stated that the merchandise described on protest No. 58/12088 consists of three vases. However, the protest itself claims that:

Figures ASSESSED at 4¾ cents a dozen plus 23½ percent, under par. 211 are dutiable under par. 1547a.

The invoice covered by this protest describes the merchandise as lamp bases, bowls, vases, and plates.

The other protest, No. 58/12139, states:

Wall panels are dutiable at 10% under par. 1547 as modified.

The invoice describes the merchandise contained in the shipment as:

1 Wall Panel, Grecian Warriors
1 Wall Panel, Mermaid with fish and octopus
1 Harlequin with musical instruments
2 Harlequins with musical instruments

plus additional harlequins and shepherds.

According to the evidence produced at the trial, the items described as harlequins and shepherds were sculptures consisting of complete 3-dimensional figures into which holes were drilled so that they could be hung on a wall.

Counsel for the defendant claims, in her brief, that protest No. 58/12139 should be dismissed insofar as the harlequin and shepherd figures are concerned, on the ground that they were not covered by the protest.

Both protests state in the printed portion:

\* \* \* This protest is intended to apply to all goods covered by the entries referred to, of the same kind or character as the goods specified, whether or not particularly enumerated herein.

Both protests have been amended to include a claim for free entry under paragraph 1807.

Section 514 of the Tariff Act of 1930 provides that a protest set forth "distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto." Under this section, it has been held that a protest must show that the objection made at the trial was in the mind of the party at the time of filing and that it was sufficient to notify the collector of its nature and character, so that he might have an opportunity to make corrections. *American Mail Line, Ltd.* v. *United States*, 34 C.C.P.A. (Customs) 1, 6, C.A.D. 335, and cases cited. A protest may not be amended to include goods not originally involved after the statutory limit for filing a protest has run, since by the running of the statute the importer's claims are barred as to such goods. *Marshall Field & Co.* v. *United States*, 20 C.C.P.A. (Customs) 225, T.D. 46037; *United States* v. *Macksoud Importing Co. et al.*, 25 C.C.P.A. (Customs) 44, T.D. 49041.

In *U. Fujita & Co. et al.* v. *United States*, 26 C.C.P.A. (Customs) 63, T.D. 49611, one of the protests claimed that "Utensils, and Hollow or Flat Ware" were dutiable at certain rates. The same sentence, as that quoted above, in regard to the goods of the same kind or character, was included in the protest. The invoice and entry covered a variety of articles, such as manufactures of brass (ornaments), manufactures of silver-plated ware, manufactures of linen, manufactures of stone, and manufactures of wood. It was held that there was nothing in the protest or in the invoice or entry, plus the protest, which would direct the collector's attention to the articles intended to be covered thereby; and that it would have been impossible, without a stipulation of counsel describing the merchandise, for the court to determine what merchandise was intended to be covered by the protest. The court held that the protests were not in conformity with the requirements of section 514 and were insufficient to confer jurisdiction upon the court to adjudicate the issues attempted to be raised. It was, therefore, held proper for the trial court to have dismissed said protests *sua sponte*.

In *United States* v. *Weigert-Dagen et al.*, 39 C.C.P.A. (Customs) 58, C.A.D. 464, the protests described the merchandise as "certain leather huaraches," and the trial court permitted amendments adding the words "and/or slippers (for housewear)." It was held that the court erred in permitting the amendments, on the ground that they sought to extend the scope of the protests by bringing in new merchandise as to which the collector's classification had become final and conclusive.

*National Carloading Corporation* v. *United States*, 42 Cust. Ct. 493, Abstract 64258, involved a protest referring to samples of merchandise and a letter of the Bureau of Customs. The court held the protest insufficient, stating:

* * * Although the entry which it covers embraces three different types of merchandise, the protest does not specify on its face which of the three is the subject of controversy. Neither does it set forth the provisions of law claimed to be controlling. Whether or not the collector, possessed of information obtained from plaintiff's letter to the Bureau of Customs or other sources, may have been apprised of plaintiff's objections to the liquidation, the protest itself does not state a cause of action.

In the instant case, the entry covered by protest No. 58/12088 describes the merchandise as decorated earthenware, not tableware. The invoice includes lamp bases, bowls, vases, and plates. The protest refers to figures. Plaintiff is now making claims as to merchandise described on the invoice as three vases, "women in the garden pearl." It is clear that there is nothing in the protest or the entry or invoice which would have directed the collector's or the court's attention to these three vases as the articles intended to be covered by the protest. The scope of the protest cannot be extended by bringing in new merchandise. This protest is insufficient to confer jurisdiction on the court to determine issues as to vases and must be dismissed.

The other protest, No. 58/12139, refers to wall panels. The entry covered thereby describes the merchandise as sculptures, statuary, reproductions, etc. The invoice lists separately wall panels, harlequins, and shepherds. The articles designated as harlequins and shepherds are 3-dimensional figures. They are not panels within the common meaning of that term. See Webster's New International Dictionary (1953 edition), which contains the following pertinent definitions:

3. * * * d A sunken, raised or (rarely) flush compartment of a surface, as a ceiling or wall, with a molded or other margin, sometimes of different material or color. * * * 4. * * * a A slab or thin flat piece of wood on which, instead of canvas, a picture is painted; * * *.

Moreover, plaintiff's witness testified that the harlequins and shepherds were complete figures and entirely different from wall panels. Since the invoice lists wall panels *eo nomine* separately from harlequins and shepherds, it is obvious that the collector's attention was directed to the panels alone and not to the other items, which are not of the same kind or character as the goods specified. The claim in a protest must be identified with the particular merchandise in the entry, if more than one kind of goods is contained in the entry. *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 26 C.C.P.A. (Customs) 267, 276, C.A.D. 26.

For the reasons stated, we hold that protest No. 58/12139 confers jurisdiction upon the court only insofar as wall panels are concerned.

At the trial, Robert H. Rissman, a copartner in a wholesale accessory and art shop, testified that he had been collecting art for 25 years and had majored in art in school; that he had visited most of the museums in the country and attends the openings of important art shows in the locale. He said it was part of his business to know who artists are and to be able to recognize fine art work and a true artist. His firm guarantees the objects it sells as being works of art. He defined a work of art as something that is completely original, that is not duplicated.

Mr. Rissman stated that the wall panels involved herein were made by a Professor Rosa from flat sheets of clay which he sculpted into a bas relief. A glaze of mineral colors was put on in the manner in which paint is applied. Then, the pieces were put into a kiln and fired. Sketches of the panels made by Professor Rosa before he did the finished work were received in evidence as plaintiff's illustrative exhibits 1 and 2. According to Mr. Rissman, the pieces are not articles of utility or for industrial use.

Mr. Rissman's information about Professor Rosa is contained in the following testimony:

Q. Have you ever had the opportunity of becoming familiar with the reputation of Professor Rosa so far as his artistic talents are concerned?—A. Not as much, not too much. We only met him briefly. We heard about him and we did considerable things and he did considerable things for us. He did considerable things for us and we didn't actually know too much about him other than having heard much about him.

Q. Had you heard of his reputation as an artist?—A. Yes, his work.

Q. What was his reputation?—A. He was a very fine artist. That was our reason for contacting him.

\* \* \* \* \* \* \*

Q. Do you mind telling us how?—A. Through friends, business associates.

The witness also stated that Professor Rosa had been commissioned by Cera Miche San Polo, a place where ceramics are made, to do some work for them from time to time. In connection with work done for the plaintiff, the witness made suggestions to Professor Rosa, who then made designs and submitted them to plaintiff for approval. The completed pieces were sold to interior decorators, not to art galleries, although the witness stated that they fell within his definition of a work of art.

In our opinion, the record presented falls far short of establishing that the imported wall panels are original paintings or sculptures within the purview of paragraph 1807 or works of art under paragraph 1547. Mr. Rissman is a partner in an art and accessory shop which sells merchandise to interior decorators. He said he had studied art and collected art, but gave no details. He had visited museums and art shows. His only definition of a work of art was that it was something original, not duplicated. This evidence is not sufficient

to establish Mr. Rissman as qualified to judge whether an article is a work of art or not.

Furthermore, the record is extremely vague as to the qualifications of Professor Rosa, who made the imported wall panels. The witness had heard about him through friends and business associates and had met him briefly. When ordering articles, he made suggestions to him as to the subject and the designs were submitted to plaintiff for approval. None of the articles was ever sold to an art gallery. According to the witness, Professor Rosa worked for the ceramics manufacturer on a commission basis. The court cannot determine, from this evidence, that Professor Rosa is a professional artist or that the wall panels made by him are works of art. Neither the panels themselves nor photographs thereof have been exhibited to the court to aid it in reaching a decision.

For the reasons stated, protest No. 58/12088 is dismissed. Protest No. 58/12139 is overruled as to the claims made with respect to wall panels and is dismissed as to all other claims purportedly made thereunder. Judgment will be rendered accordingly.