BEFORE THE SECOND DIVISION, DECEMBER 17, 1962

No. 67273.—Shreve & Hays, a/c Engine Imports, Inc. *v.* United States, protest 60/28095 (San Diego).

RAO, Judge: When this case was called for trial, counsel for plaintiff moved to amend the protest to allege that certain filter links, invoiced as "S. 1026 12″ Filter Links," should be assessed with duty at "8¾ percent under paragraph 372 or 353, as modified." Counsel further advised the court that if the motion were granted, he would abandon all other claims in the protest.

Counsel for defendant opposed the motion on the ground that it purports to embrace merchandise not covered by the protest, as originally filed; and, in

view of plaintiff's expressed intention of abandoning all other claims, counsel for defendant moved to dismiss the protest.

Upon request of adversary counsel for permission to brief their respective positions, time therefor was allotted by the trial judge, and decision on the motions was reserved for this division.

It appears that four items of merchandise were involved in the instant importation, which were invoiced and entered as follows:

Item "S. 0593 Wiflex Mirrors L.H. Fitting," at the rate of 35 per centum ad valorem, pursuant to paragraph 230(b) of the Tariff Act of 1930, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by T.D. 53877.

Items "S. 1026 12'' Filter Links" and "S. 0497 Tricon Switches," at the rate of 10½ per centum ad valorem, within the provision for parts of automobiles in paragraph 369(c) of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

"Filter Link Cards (No Charge)," not entered.

Liquidation of the entry resulted in the following classifications and assessments of this merchandise:

Mirrors at the rate of 15 per centum ad valorem, within the provision for parts for motorcycles in paragraph 369(c) of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Switches at the rate of 17½ per centum ad valorem, in paragraph 353 of said act, as modified by the Torquay Protocol to said General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as electric switches.

Filter links at the rate of 19 per centum ad valorem, pursuant to the provisions of paragraph 397 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, *supra*, as manufactures of brass, not specially provided for.

Filter link cards, at the rate of 17½ per centum ad valorem, pursuant to the provisions of paragraph 1413 of said act, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, as manufactures of paper, not specially provided for.

Within the time prescribed by section 514 of the Tariff Act of 1930, plaintiff filed a protest against the collector's action, alleging the following:

COLLECTOR OF CUSTOMS

September 12, 1960 [1] 19

PORT OF San Diego

Sir:

Notice of dissatisfaction is hereby given with and protest is hereby made against your decision, liquidation and assessment of duties at 35% P. 230(b) or other rate or rates on

Antennas and mirror frames

covered by the entries below named, or other merchandise covered by said entries. The reasons for objection under the Tariff Act of June 17, 1930, and amendments thereto, are as follows:

We claim that said merchandise is properly dutiable at 12½% under paragraph 353.

We further claim that the assessment of duties made herein is illegal and void.

---

[1] Portions of the protest, hereinabove underscored, were typewritten into an otherwise printed form.

The above claims severally and collectively are alternatively made under the paragraphs or sections cited, both directly, and by virtue of the "similitude" and "component material of chief value" clauses of Par. 1559 of the Tariff Act of June 17, 1930 and under the rules relating to the ordinary meaning of words, the commercial designation of the merchandise, or the chief or principal use thereof.

| Vessel | Entry No. | Entered | Bond No. | Liquidated |
|--------|-----------|---------|----------|------------|
| Magdala | 534 | 10-27-59 | | 8/25/60 [2] |

Notify

Lawrence & Tuttle, Attorneys
351 California Street
San Francisco 4

Respectfully,
Shreve & Hays John C. Hays [2]
A/C Engine Imports, Inc.
Lawrence & Tuttle [2]

The collector's timely answer to the protest suggests uncertainty as to the basis of plaintiff's disagreement with his action. He states that the merchandise which he classified in paragraph 369 at the rate of 15 percent was "Motorcycle *rear view mirrors without antennas*" and that the entry *did not include* antennas and mirror frames liquidated under paragraph 230(b) at 35 percent.

It is thus apparent that, in reviewing the allegations of the protest, the collector considered only those items specifically identified by typewritten insertion, and, finding no articles in the entry conforming to that description, adhered to his original action.

Plaintiff's request for leave to amend the protest is predicated upon that portion thereof which relates to "other merchandise covered by said entries" assessed at "other rate or rates." It is urged, in substance, that a protest ought not to be literally confined; that its language should be broadly construed; and that, under such construction, filter links must be considered as having been covered by its original intendment.

It is the position of defendant that the protest, as initially phrased, was not even "remotely suggestive" of filter links, and that to allow such merchandise to be now considered as embraced within its scope would contravene the statute of limitations upon the filing of protests.

Both parties acknowledge, by reference to the case of *United States* v. *Macksoud Importing Co. et al.*, 25 CCPA 44, T.D. 49041, the settled proposition that an amendment to a protest must relate to merchandise originally covered by it and may not introduce new causes of action, if the 60-day limitation imposed by section 514, *supra*, has expired. As already indicated, however, their differences lie in the application of this principle in the determination of the extent to which the instant protest can be said to state a cause of action in connection with the collector's classification of, and assessment of duty on, the merchandise invoiced as filter links.

Our consideration of the allegations of the instant protest, in the light of the merchandise covered by the entry to which it is addressed, suggests that perhaps a more basic issue is in fact involved. It concerns the question of the sufficiency of this protest to state a cause of action with respect to any merchandise whatsoever.

Under the provisions of section 514 of the Tariff Act of 1930, a protest against a decision of the collector must set forth "distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto." Judicial interpretation of the requisites for a valid protest within the intendment of section 514 and its similarly phrased predecessors in prior acts has consistently adhered to the view that, although no formality of expression is dictated, a protest must sufficiently, in view of all the cir-

[2] Handwritten.

cumstances, call the collector's attention to the importer's objections so that he may consider and pass upon the same. *U. Fujita & Co. et al.* v. *United States*, 26 CCPA 63, T.D. 49611; *United States* v. *Sheldon*, 5 Ct. Cust. Appls. 427, T.D. 34946; *United States* v. *Macksoud Importing Co. et al., supra; American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335.

The following quotation from the case of *Lichtenstein* v. *United States*, 1 Ct. Cust. Appls. 79, T.D. 31105, is a classic statement of the rule:

It is not essential that the importer shall in the protest "hit the bird in the eye." But it is essential that he state his claim with such reasonable clearness and certainty as to acquaint the collector with the real ground of his complaint. This protest is misleading rather than informing. This obscurity results from a pernicious method of attempting to throw upon the collector and the courts the burden which properly rests upon the protestant of fairly apprising the collector and the court of *real* claims as distinguished from possible claims, which might be appropriately made with reference to goods not involved in the importation in question. [Italics quoted.]

We have the collector's timely report as an indication that he was not at all clear as to the nature of the claim made by this importer, and we are of opinion that his doubts were not at all unreasonable under the circumstances of this case. It must be remembered that the entry which is involved here covered four different categories of articles, which were classified by the collector in accordance with four separate and distinct provisions of the tariff law. The protest which the importer filed mentioned none of these articles either by invoice designation or by any description even slightly suggestive of their actual character. In this connection, we note the recurrence of the word "mirror" in both invoice and protest, but observe no identity between mirrors and fittings which are parts of motorcycles and "Antennas and mirror frames," which are allegedly classifiable with mirrors in paragraph 230(b). Aside from the erroneous reference to articles not included in the entry, the protest purports to embrace, by way of printed matter in a standard form, all "other merchandise covered by said entries."

We think it is clear that the collector's attention was not directed to any of the imported items by the specific description contained in the protest, simply because there was no such merchandise before him. We think it equally clear, under the circumstances of this case, that he could not have been expected to consider that the classification of any other merchandise was in issue merely by reason of the general allegation concerning "other merchandise covered by said entries."

Although section 514, *supra*, does not expressly provide that any merchandise be specified in the protest, it has been so construed as to require, in instances where more than one kind of merchandise is involved, that the claim be identified with the particular item to be challenged. *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 26 CCPA 267, C.A.D. 26, *Hudson Rissman* v. *United States*, 46 Cust. Ct. 133, C.D. 2246. A blanket description in a standard form which fails to indicate either the provision of law invoked by the collector or the rate of duty assessed by him, where several different kinds of articles are imported, can not be said to fairly apprise the collector of the importer's objections to his decision with respect to any one item or class of items. The attempt to narrow the scope of the claim from the general to the specific by way of a motion to amend, made long after the time for filing a protest, comes too late. "It * * * cannot be argued logically, that under circumstances like those at bar an invalid pleading can be rendered valid by the protestant abandoning a portion of it and explaining to the court what his claims are and what they are claimed to be against." *United States* v. *Fred. Gretsch Mfg. Co., Inc., supra.*

In view of the foregoing consideration, the motion to amend the instant protest is denied. The motion to dismiss is granted, not on the grounds assigned, but for the reason that the protest fails to state a valid cause of action.

Order and judgment will be entered in accordance with this decision.